Waiting for them to reset my time, Your Honor. What did you say? I was waiting. Okay, they just reset my time. Jason Carr, on behalf of Appellant Re. Charles Smith, may it please the Court. You've got to push the reset button. Go ahead. Your Honor, this is really, in essence, a case about federalism. Certainly our issue about the jury instruction, the Interstate Commerce Hobbs Act jury instruction, is an issue involving federalism. And we are constrained to say at this time that that issue is foreclosed by a current Ninth Circuit precedent. The Atchison case says clearly that the prosecutor need not prove any effect on interstate commerce and need only prove a minimal probable effect. And it's good that for the government that precedent exists because in this case, they were not able to prove any effect on interstate commerce. They need that case to make this a valid federal prosecution. And what is the point of all this? The point is that there was very, very little federal interest in this case. And why is that important? It becomes important when we look at the IAD issue and whether the judge abused his discretion in deciding that this case should be dismissed without prejudice. And it's interesting when you look at the government's brief. The government says in its brief that, well, this is a case inappropriate for dismissal of prejudice because this was a bizarre set of circumstances. And that's what the district court said as well. I really don't understand that at all, Your Honors. What happened here was Mr. Smith was transported by the State of Nevada because he was serving a parole violation sentence out in the middle of the Nevada desert to a high desert prison far away from Las Vegas. How far? About 70 miles. They do that in about 35 minutes there, don't they? Depending on how fast you drive. Certainly, Your Honor. But, Your Honor, it was not in Las Vegas. He was at a Nevada BOP facility, a prison. The U.S. Marshals lodged a detainer against him there. They knew he was in a prison. When his court appearance, time for his court appearance at federal court came, pursuant to a writ of ad prosequendum, they drove the U.S. Marshal van all the way out to the middle of the Nevada desert, picked him up, brought him back. Then after the court appearance, they drove him out in the van back out there. And this is not an inadvertent violation of the IED. This is an intent not intentional, but this is an act that the U.S. Marshals and the prosecutors did in clear violation of the act. And we have evidence here with the U.S. The first assistant U.S. Marshal Dewey testified at the hearing that 30 years after the passage of the IED, that they had not ever come up with any programmatic procedures, any procedures at all for dealing with the IED in a lawful manner. That what they essentially had going on in our district was the systemic violations of the IED. And the trial counsel in this case cited in his original motion to dismiss, another case that he had been involved with recently, where they did the exact same thing. And that case is cited in that motion. It's United States v. Lucas. The district court in that case entered a dismissal without prejudice. Did the U.S. Marshals, did the U.S. attorneys get the message there? No. Nothing had occurred. They're still doing the same things. Now, the U.S. in the government's brief says also, well, there was no harm to Mr. Smith because shortly after the defense counsel filed their motion to dismiss, we brought him back into federal custody. So what the government is saying is, well, there's no harm here because after we were caught, we tried to rectify the matter. We tried to rectify the situation. And that's akin to a defendant going into sentencing and saying, judge, I shouldn't be punished for this because as soon as I was indicted, I quit dealing drugs. Another important factor of this case, and this is when the federalism aspect really comes in, is that the government makes much ado in their answering brief about the fact that, look, because we were able to prosecute this quintessential state court crime federally, Mr. Smith received this huge draconian sentence that he wouldn't have received in the state of Nevada, and isn't that great? Well, Your Honors, as a citizen of the state of Nevada, I say that that is a factor that should cut against the government because we, the people of the state of Nevada, through our legislative acts and our judges who are elected in the state of Nevada, have a right to say what the punishment for a crime should be. Mr. Smith is an individual with a very limited criminal record. He's a very young man. This robbery at the video store was his first violent crime. Do we not, as the people of the citizens of the state of Nevada, have the right to say that this is an individual who should indeed be punished, but perhaps rehabilitated, that he should get a prison sentence? Yes, he did a bad thing. He should be punished. But do we have the right to say that he should be punished in a manner where he gets parole, where we can try to reintegrate him into society? Does the federal government have the right to take him away, give him this draconian sentence, institutionalize this man, effectively make it so he'll never be a productive citizen, never be a productive citizen of the state of Nevada, and then just reject him into our society when he's 40 years old and has no skills and no chance to ever contribute to society? And that's an important factor here. The IAB section 9-1, which talks about the factors that a court is supposed to look at, says that those factors are non-exhaustive. An important factor to look at here is what about comedy? What about federalism? What about respect to the state? And why not, when you have what is essentially a quintessential state crime, why not let the state prosecute it? What is the federal interest here? So we have systemic violations of the IAB here. And first, the marshal testified he admitted to it. He says we have no procedures. There's evidence in the record this stuff had been going on routinely in the District of Nevada. We have what is essentially a state court crime. The government says, oh, it would be a travesty of justice to allow this to be dismissed with prejudice. What's the travesty? The state would have picked it up and prosecuted it, and he would have been punished in accordance with the wishes of the people of Nevada. I would submit another important fact here, Your Honor, to look at, is the government makes sites present from this court talking about the main purpose of the IAB is about prisoner rehabilitative programs. Well, that case law has been overruled to a large extent by Boozman. When you look at Boozman on page 156 of the U.S. Reporter, what they talk about there is they say, no, look, and Boozman is an anti-shuttling case. They say, no, look, there's a lot of other reasons why we have this anti-shuttling provision. One of the reasons is that the receiving state here, the federal government, is supposed to pay for the guy's custody while he's awaiting trial. Here, the federal government tried to shirk that responsibility by shipping the guy back to the state of Nevada and letting them pay for his custodial confinement during the trial. They also talk about, what about the effect on the defendant? This guy, what about people who have to be constantly shuttled to and from prisons? And it's interesting because the government says in their brief, Mr. Smith couldn't have suffered any prejudice. The only somebody who doesn't represent criminal defendants would ever say that because if you know defendants, you know that one of the most harshest aspects of being in custody is prison transport, that the prison transport procedures are demeaning and very disruptive to the defendants. So Mr. Smith did suffer prejudice. He was shuffled back and forth from this prison out in the middle of the Nevada desert at least three times. Your Honors, I would ask this Court to take a look at what kind of violation of the anti-shuttling provision would warrant a dismissal with prejudice. Under the government's rationale, under the district court's rationale, there really is no case that would allow for dismissal with prejudice under the IED. And, Mr. Smith, if you look at Boozman, the Supreme Court directly talks about this. And they say, look, the anti-shuttling provisions are there for a reason. And in Boozman, it was a one-day shuttle. They shuttled him into federal court, they shuttled him back, or from federal court to state court in Boozman, excuse me. And the Supreme Court said, look, man, that is not a technical de minimis violation of the act. That is, it directly goes to the essence of what the IED is all about. And in another case by this Court, United States v. Reed, this Court talks about how the government should not be able to either intentionally or negligently disrupt the prisoner's rights under the IED. Here what we have is, in looking in the light most favorable to the government, a negligent violation. The government was on notice that they were violating the act. They kept doing it. And the judge could have made it with prejudice or without prejudice. Certainly. And that's what this is all about, whether he abused his discretion by doing it with prejudice. Because there was no remedy here for Mr. Smith. The government suffered no harm here for violating the act. They just simply reindicted him the next day and proceeded the prosecution. I have to submit, Your Honor, the only way that we're ever going to get 100 percent compliance with the IED is that there will be a penalty. There must be a penalty for violating the act. They're on notice. In this case, they're put on notice, look, you've done this before, and, you know, without a dismissal of prejudice, there's nothing that's going to stop them from doing it again. I'd like to reserve the rest of my time for rebuttal, if I may. Okay. Thank you. Good morning. My name is Russell Marsh. I'm an assistant United States attorney in Las Vegas. I represent the government in this case and in the next two cases, including the related case of Mr. Jones, which also raises the interstate commerce question, which really counsel didn't get to. So I'm probably going to spend most of my time in this argument talking about the Interstate Agreement on Detainers Act and the Court's ruling in that respect. And as you noted, that's clearly a matter that's given to the discretion of the trial court, and for good reason. The trial court is in the best position to know whether or not there's a problem in this particular district and how best to deal with it. And what he did was he basically put the district on notice, put the U.S. Attorney's Office and the marshals that they'd better get their act together, and if they don't Why took them so long to come around to that? Well, Judge, you know, really there's two you've got to remember there's two violations  I mean, you know, President Bush has said, you know, if you don't follow the law, there's got to be consequences. You heard him say that. And there are consequences. There was a dismissal. They were put on notice. And remember, the district judge, there were two violations. The first one, although counsel says it's – it was intentional, clearly inadvertent. The government did not know that this defendant's parole had been violated, which totally changes his status under the act. If he was just a pretrial detainee in the state, he could have been shuttled back and forth 20 times. But because his status changed without the government knowing about it, then all of a sudden he can't be moved back and forth. And really all that happened here was he was brought into federal court for one day twice. Why didn't the government know about it? Why didn't the government know about it? Yeah. You know, the only record is that they didn't. And I – Well, I mean, it's all on computers, isn't it? You put the guy's name in, Social Security, whatever, and a computer tells you everything about their history. Isn't that right? Right. But you're talking about something that happened in a period of like two or three days. But they put it in right away. I don't know that for a fact. Well, I've seen those. There's no record one way or the other about whether it was in the computer. But what is clear is what the prosecutor knows is I'm going to bring this case federally and they're going to dismiss the State charges. He has no idea that they're going to, in the meantime, that he's going to admit that he violated his parole and be sent to State prison. Now, they find that out later, and as soon as the prosecutor learns what has happened, he has him brought back and he spends the rest of the time in federal detention awaiting trial. And so the district judge looks at all of the factors, looks at the facts and circumstances of the case, says that this is a bizarre set of circumstances, and I think it is, particularly the part about the defendant admitting his parole violation. He says that there's no prejudice to the defendant, which there was not, nothing affecting the way that he was able to defend the case. Counsel makes a good point. Certainly it's inconvenient. I've heard defense counsel complain about people having to get up at 3 in the morning to be bused, you know, to another court or whatever. We all know that's an inconvenience. It's not the best thing. But by the time trial rolled around, this guy had been sitting in federal court for several or federal detention for several months. It didn't affect his case at all. And there's no evidence of any improper motive on the government's part other than sort of the systematic problem. And the district court was in the best position to know what to do with that. He warned them. He said you need to put policies in place. To the best of my understanding, there hasn't been a similar problem since or that I know of. And that was how he felt that it should be dealt with. And that's why it's very fact-specific, and that's why we leave it up to the district court to decide under an abuse of discretion review. I want to talk a little bit about the Hobbs Act issue. I agree, this is a case about federalism. And this is a federal case. Certainly you can argue it could have been brought in state court. You can say that about almost every single case that is brought criminally in federal court. You could say that a drug case could have been brought in state court. You can say that a robbery like this could have been brought in state court. Our office decided to bring it. That's an exercise of prosecutorial discretion. It happens every single day in U.S. attorneys' offices around the country. But does your office have an agreement with the county prosecutor? I know that at that time, a couple of years ago, that there was more of an interest because of the problem of guns and violence in Las Vegas, that there was meetings between the prosecutor's offices, both federally and the local prosecutor there in Clark County, to decide which cases should go federal, in both guns cases and some violent crimes like this. And I think if you note the circumstances of both this and the next case, which are related, this is a particularly egregious robbery. And you can see why the federal government might have an interest in bringing it. The defense counsel says, well, the state of Nevada would only give them a slap on the wrist, and that's up to them. That's what they want to do. Basically, what he's doing is taking issue with the sentencing guidelines. And if you compare the 883 months that this defendant got to the sentences that you other defendants get, it's hard to say that he didn't deserve that, at least under the federal system and under the guidelines as they now stand. And, you know, it's really just second-guessing the discretion of the U.S. Attorney's Office to bring the case. The defendant concedes that Acheson applies. The only argument in the brief was basically to overrule Acheson. I don't believe that this panel has the authority to do that. That would have to go en banc. And, in fact, there was evidence in this case of extensive effects on interstate commerce. This video store, Hollywood Video, everything in its store, everything it sells, everything it rents, all the videos, all the DVDs, all the candy, the snacks, the drinks, even the signs that it puts up in the store all come from out of state. And because of this robbery that occurs between Christmas and New Year's, they have to close down for several hours that night because there's no money left in the store to run it. So it obviously has an effect on all of this stuff that's moving in interstate commerce. There's a showing of actual effect. And there's really nothing to complain about in that respect. The jury instruction was proper. Even if it hadn't been because of the substantial effect on interstate commerce that I've just outlined, any error would have been harmless. Does the panel have any further questions? Thank you. Thank you. The U.S. attorney in our district likes to release press releases saying we're only going to refer the worst offenders from state courts to the federal system. Mr. Smith is not one of the worst offenders. His record is very minimal. He has one prior conviction. His briefs are over there. The spirit of Mr. Smith is with him. But he's not one of the worst offenders. This is the first crime of violence he ever did. He's a very young man. And what the Supreme Court said in Morrison, a 2000 case, an interstate commerce case, they said that there's no better example of the police power that should be reserved to states than how the I mean, the point here is that there's no Federal interest. And if you give me one moment, I want to clarify something that's very important. The government keeps saying that this was not intentional, but the government filed a detainer against Mr. Smith when he was at a Nevada state prison. They knew that he was in prison. You do not go to prison unless you are serving a state prison sentence. He was not in local custody. They issued the detainer at the prison, and then they drove out to the prison and got him. So their argument that this was unintentional, that they didn't know he was serving a state prison sentence, does not wash under these facts at all. And unless the panel has any further questions, I'll sit down. Thank you. Thanks a lot. All right. The matter is submitted. We'll go to the next one.
judges: Pregerson, Beam Paez